# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: _____

RICARDO ORNELAS, an individual,

    Plaintiff,

v.

ABM INDUSTRIES INCORPORATED, a Delaware corporation,
CORALEE TRAURIG, an individual,

    Defendants.

---

## COMPLAINT AND JURY DEMAND
---

Plaintiff Ricardo Ornelas ("Mr. Ornelas"), through counsel, Lewis Kuhn Swan PC, submits his Complaint and Jury Demand as follows:

## INTRODUCTION

1. This proceeding seeks damages to redress violations of Mr. Ornelas's rights under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.*

## PARTIES

2. Mr. Ornelas is an individual domiciled in Colorado.

3. Defendant ABM Industries Incorporated d/b/a ABM Janitorial Services ("ABM") is a multinational facility management corporation incorporated in the State of Delaware with its headquarters in New York, New York. In 2019, ABM's revenue was approximately $6.5 billion.

4. Defendant Coralee Traurig ("Ms. Traurig") is Operations Manager of ABM's

extensive Colorado Springs operations. In her capacity as Operations Manager of ABM's Colorado Springs operations, Ms. Traurig had authority to, and in fact did, control the terms and conditions of ABM's staff, including pay practices, such as Mr. Ornelas. Ms. Traurig is an individual domiciled in Colorado.

5. ABM and Ms. Traurig shall collectively be referred to as "Defendants."

## JURISDICTION AND VENUE

6. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 as this action is brought under the FLSA.

7. ABM is subject to personal jurisdiction in Colorado because it conducts substantial business operations in this State and because the acts alleged herein occurred in this State.

8. Ms. Traurig is subject to personal jurisdiction in Colorado because she is a resident and citizen of this State and because the acts alleged herein occurred in this State.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the unlawful conduct complained of herein arose and occurred in the District of Colorado.

## GENERAL ALLEGATIONS

10. ABM is a multi-billion-dollar multinational business entity focusing on facility management including, as relevant here, janitorial services. One of ABM's largest clients in Colorado is the United States Olympic Training Center in Colorado Springs, Colorado. Approximately sixty (60) ABM employees are assigned to this particular client.

11. Mr. Ornelas began working for ABM at the beginning of July 2019. His title was Assistant Manager, and he reported directly to Ms. Traurig. In his position as Assistant Manager, Mr. Ornelas oversaw the work of four (4) supervisors and approximately sixty (60) custodians.

12. Despite his low hourly rate of pay ($13.50), Mr. Ornelas was classified as exempt from the overtime requirements of the FLSA. Mr. Ornelas does not herein challenge the propriety of his classification.

13. Over the course of his employment, but most acutely in December 2019, Mr. Ornelas began receiving countless complaints from the custodians under his management that ABM was routinely manually reducing the accurately-reported work hours from custodians.

14. By way of example, Andrea, one of the custodians under Mr. Ornelas's management, reported to Mr. Ornelas during the pay period before Christmas 2019 that seven (7) hours of time she worked and properly entered had been manually slashed. There was no factual or legal basis to remove this time from Andrea's work hours. Andrea is just one of many custodians who reported ABM's illegal conduct to Mr. Ornelas.

15. All such custodians were properly classified as non-exempt from the overtime requirements of the FLSA.

16. ABM had (and, upon information and belief, still has) in place a biometric timekeeping system that employees use to clock in and clock out. As with many such systems, management was able to manually override biometric entries when, for example, an employee inadvertently did not clock in or clock out. Metadata from this system reveals when all such manual overrides were made, what changes were made, and who made such changes.

17. Upon learning from custodians that management routinely reduced the hours they accurately reported working, Mr. Ornelas investigated these claims. Among other things, Mr. Ornelas learned that Ms. Traurig, acting through her close friend (and one of the supervisors Mr. Ornelas managed) Felonzo Deal, had regularly manually overridden custodians' accurately-

reported work hours. Ms. Traurig had provided her login credentials to Mr. Deal so as to facilitate the theft of custodians' accurately-reported work hours. Upon information and belief, Ms. Traurig provided authorization to Mr. Deal to steal custodians' accurately-reported work hours by manually removing or otherwise altering such entries from the biometric timekeeping system.

18. Ms. Traurig routinely authorized Mr. Deal to be paid for time he did not actually work, including several dozen hours of overtime he did not actually work. Video footage from the United States Olympic Training Center revealed that significant time (including overtime) that Mr. Deal reported working and for which he was paid was false. Specifically, such footage revealed that Mr. Deal (1) slept on the job at the United States Olympic Training Center, and (2) failed to perform tasks he reported performing (such as cleaning the shooting range at the Training Center). On at least several occasions, Mr. Deal did not even report to work. Upon information and belief, Ms. Traurig was on actual notice of—and, in fact, directly authorized—Mr. Deal's conduct.

19. Familiar with the requirement that custodians under his management be paid for the time (including overtime) they actually worked and had accurately reported, and having personally investigated the custodians' accusations, Mr. Ornelas complained directly about these pay discrepancies to Ms. Traurig in or about mid-December 2019. Mr. Ornelas informed Ms. Traurig that AMB, acting through her, was breaking the law in stealing these custodians' wages.

20. When Mr. Ornelas engaged in protected activity by so informing her, Ms. Traurig reacted indignantly. She said that she did not care about these reports, was not going to fix the situation, and that the custodians would not be receiving the pay to which they were legally entitled. Ms. Traurig never defended her, and Mr. Deal's, conduct, and she did not attempt to justify why such conduct was legal.

21. Approximately one week after Mr. Ornelas's FLSA-protected activity, ABM, through Ms. Traurig, suspended him in retaliation therefor. Within approximately three days after his suspension, ABM, through Ms. Traurig, terminated Mr. Ornelas's employment.

**CLAIM FOR RELIEF**
**Retaliation under the Fair Labor Standards Act**
**(29 U.S.C. § 215(a)(3))**
*Mr. Ornelas against both Defendants*

22. Mr. Ornelas incorporates by reference all preceding paragraphs of this Complaint.

23. At all times relevant to this Complaint, ABM was an employer within the meaning of the FLSA and employed Mr. Ornelas.

24. At all times relevant to this Complaint, Ms. Traurig was an employer within the meaning of the FLSA and employed Mr. Ornelas.

25. Upon receiving credible complaints from custodians under his management that Defendants were violating the terms of the FLSA, Mr. Ornelas independently investigated these allegations and found there to be a reasonable factual basis therefor.

26. Pursuant to 29 U.S.C. § 215(a)(3), Mr. Ornelas complained to Defendants because of their violations of the FLSA. Such conduct constitutes lawful protected activity.

27. Defendants discharged Mr. Ornelas because of his engagement in FLSA-protected activity and otherwise discriminated against him, including by suspending him shortly before his termination.

28. Defendants' illegal retaliation against Mr. Ornelas was not in good faith, and thus, Mr. Ornelas is entitled to liquidated damages.

29. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA pursuant to 29 U.S.C. § 255(a).

30. Due to Defendants' violations of the FLSA's anti-retaliation provisions, Mr. Ornelas is entitled to recover from Defendants back pay, reinstatement with the same seniority to his position or front pay, liquidated damages, emotional distress damages, reasonable attorneys' fees, and costs and disbursements of this action pursuant to 29 U.S.C. § 216(b) in an amount to be proven at trial for which Defendants are liable.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Ornelas prays for the following relief:

1. Judgment in his favor on his claim for relief;

2. Nominal, pecuniary, actual, and compensatory damages, including emotional distress damages;

3. Liquidated and/or punitive damages as a result of Defendants' unlawful retaliation;

4. Costs and expenses of this action together with attorneys' and experts' fees;

5. Pre- and post-judgment interest at the maximum rate permitted by law; and

6. Any and all such other and further legal and equitable relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Mr. Ornelas hereby demands a jury trial on all causes of action and claims with respect to which he has a right to jury trial.

Respectfully submitted this 10th day of February, 2020.

/s/ Andrew E. Swan
Paul F. Lewis
Michael D. Kuhn
Andrew E. Swan
LEWIS | KUHN | SWAN PC
620 North Tejon Street, Suite 101
Colorado Springs, CO 80903
Telephone: (719) 694-3000
Facsimile: (866) 515-8628
Email: plewis@lks.law
mkuhn@lks.law
aswan@lks.law

*Attorneys for Plaintiff*

Plaintiff's Address
c/o Lewis Kuhn Swan PC
620 North Tejon Street, Suite 101
Colorado Springs, CO 80903